**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF ARKANSAS | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF CALIFORNIA | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF COLORADO | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF CONNECTICUT | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF DELAWARE | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF FLORIDA | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF GEORGIA | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF HAWAII | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF ILLINOIS | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF INDIANA | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF LOUISIANA | ) |
| MEDICAL ASSISTANCE PROGRAMS | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |
| STATE OF MARYLAND | ) |
| ex rel. CYNTHIA KIRK | ) |
| | ) |

STATE OF MASSACHUSETTS          )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF MICHIGAN               )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF MINNESOTA              )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF MISSOURI               )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF MONTANA                )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF NEVADA                 )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF NEW HAMPSHIRE          )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF NEW JERSEY             )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF NEW MEXICO             )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF NEW YORK               )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF NORTH CAROLINA         )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF OKLAHOMA               )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF RHODE ISLAND           )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF TENNESSEE              )
ex rel. CYNTHIA KIRK            )
                                )
STATE OF TEXAS                  )
ex rel. CYNTHIA KIRK            )

STATE OF UTAH       )
ex rel. CYNTHIA KIRK    )
           )
STATE OF VIRGINIA    )
ex rel. CYNTHIA KIRK,   )
           )
STATE OF WISCONSIN   )
ex rel. CYNTHIA KIRK    )
           )
Plaintiffs,        )
           ) Case No. 10-2611-JTM-KGG
v.           )
           )
CAREFUSION CORPORATION ) **FILED UNDER SEAL**
Registered Agent:     ) **PURSUANT TO**
Corporation Service Co.    ) **31 U.S.C. § 3730**
200 SW 30th Street     ) **DO NOT PLACE IN PRESS BOX**
Topeka, KS  66611     )
           )
and          )
           )
HEALTHPOINT, INC.     )
Registered Agent:     )
Mark A. Mitchell      )
318 McCullough      )
San Antonio, TX  78215    )
           )
and          )
           )
CARDINAL HEALTH, INC.   )
Registered Agent:     )
Corporation Service Co.    )
200 SW 30th Street     )
Topeka, KS  66611     )
           )
Defendants.       ) **DO NOT ENTER ON PACER**

## COMPLAINT

Plaintiff United States of America ("USA"), ex rel. Cynthia Kirk ("Relator"), and

the State of Arkansas, State of California, State of Colorado, State of Connecticut, State

of Delaware, District of Columbia, State of Florida, State of Georgia, State of Hawaii, State of Illinois, State of Indiana, State of Louisiana Medical Assistance Programs, State of Maryland, State of Massachusetts, State of Michigan, State of Minnesota, State of Missouri, State of Montana, State of Nevada, State of New Hampshire, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oklahoma, State of Rhode Island, State of Tennessee, State of Texas, State of Utah, State of Virginia and State of Wisconsin for their Complaint against defendants CareFusion Corporation, HealthPoint, Inc. and Cardinal Health, Inc. for treble damages and civil penalties arising from defendants' off-label marketing practices and kickbacks that induced false claims to be made to Medicare and Medicaid in violation of 31 U.S.C. § 3729 *et seq.*, and corresponding state false claims and whistleblower reward and protection statutes as alleged herein, allege and state as follows:

## JURISDICTION, VENUE AND STATUTORY REQUIREMENTS

1.       This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.,* and corresponding claims under state statutes.  Jurisdiction in this Court is proper pursuant to 31 U.S.C. §§ 3732(a), (b) and 3730(b) and 28 U.S.C. § 1331.

2.       Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because the acts proscribed by 31 U.S.C. §§ 3729 *et seq.* and corresponding state statutes and complained of herein took place in part in this district and Defendants transacted business in this district.

3.       Pursuant to 31 U.S.C. § 3730(b)(2), the Relator has served with her Complaint to the Attorney General of the United States and the United States Attorney

for the District of Kansas a statement of all material evidence and information currently

in her possession and of which she is the original source.  This disclosure statement is

supported by material evidence known to Relator at the time of filing establishing the

existence of Defendants' false claims.  Because the statement includes attorney-client

communications and work product of Realtor's attorneys, and was submitted to the

Attorney General and to the United States Attorney in their capacity as potential co-

counsel in the litigation, the Relator understands this disclosure to be confidential.

Relator will also comply with the service requirements of all state false claim and

whistleblower reward and protection acts to the fullest extent possible pursuant to 31

USC § 3731(3)(c) (as amended by the Fraud Enforcement and Recovery Act of 2009,

123 Stat 1617 (May 20, 2009)).

## PARTIES

4.      Relator Cynthia Kirk, PhD RAC, is an individual residing at 19012 West

98th Terrace, Lenexa, KS  66220.

5.      Relator is the original source of the facts and information set forth in this

Complaint concerning the activities of Defendants.  The facts alleged herein are based

entirely on her direct, independent knowledge, personal observations and documents in

her possession and also on information and belief.

6.      From September 17, 2009, until October 15, 2010, Relator Kirk was Vice

President of Regulatory Affairs for the Infection Prevention Business Unit of Defendant

CareFusion Corporation ("CareFusion").  Shortly after bringing the compliance

violations outlined in this Complaint and other compliance violations to the attention of

senior management at Defendant CareFusion, CareFusion gave notice to Relator in August 2010 that she no longer should come into the office and that she was terminated effective October 15, 2010.

7.      Defendant CareFusion is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3750 Torrey View Court, San Diego, CA  92130.  It also has an office at 11400 Tomahawk Creek Parkway, Ste. 310, Leawood, KS  66211.

8.      CareFusion is a publicly traded company principally engaged in the development, out-source manufacturing, marketing and sale of pharmaceutical drugs and devices, including over-the-counter drugs falling under the jurisdiction and regulation of the United States Food and Drug Administration ("FDA").  In 2009, CareFusion had pro forma revenues of $3.7 billion.

9.      On or about September 27, 2010, Defendant CareFusion entered into a partnership agreement with Defendant HealthPoint, Inc. to market and sell two surgical antiseptic hand scrubs:  Surgicept and Triseptin.  Defendants' marketing and selling of Surgicept and Triseptin is at the heart of this case.

10.     In approximately 2005, Defendant HealthPoint, Inc. began manufacturing and selling Surgicept® (the same Surgicept  formulation is now being sold to the public under the tradename of Outlast) and Triseptin®.

11.     Defendant HealthPoint, Inc. is a subsidiary of DFB Pharmaceuticals, which is a corporation organized and existing under the laws of the State of Texas and which maintains its headquarters in Ft. Worth, Texas.

12.     DFB is privately held health care services company that also is engaged in the development, manufacturing, marketing and sale of pharmaceutical drugs and devices, including over the counter drugs falling under the jurisdiction and regulation of the FDA.

13.     Triseptin is distributed by Defendant Cardinal Health.  Cardinal Health is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 7000 Cardinal Place, Dublin, OH 43017.

14.     Cardinal Health is a publicly traded $96 billion health care services company that also is engaged in the development, out-source manufacturing, marketing and sale of pharmaceutical drugs and devices, including over the counter drugs falling under the jurisdiction and regulation of the FDA.

## FACTUAL BACKGROUND

15.     Surgeons and healthcare professionals scrub their hands with antiseptic hand scrubs like Surgicept and Triseptin prior to surgery.

16.     Surgicept and Triseptin are clear liquid products.   As part of its "Infection Prevention Portfolio," HealthPoint represents on its website that Surgicept is a "Waterless Surgical Hand Antiseptic," and that Triseptin comes in three different forms:  (1) "Water-Aided Surgical Scrub," (2)  "Hand and Body Antiseptic" and (3) "Waterless Surgical Scrub."

17.     Surgicept and Triseptin are two of the top-selling surgical scrubs. Defendants enjoy exclusive contracts with Military Treatment Facilities for Surgicept and Triseptin.

18.     Surgicept and Triseptin are commercialized as over-the-counter products regulated by the FDA as drugs.

19.     Surgicept claims to contain only alcohol as an active ingredient and an inactive ingredient chlorhexidine gluconate.  Chlorhexidine gluconate is not recognized as safe and effective under the monograph governing healthcare antiseptic products (referred to here as the "TFM").

20.     Triseptin claims to contain only alcohol as an active ingredient.  However, Triseptin contains another active ingredient – zinc pyrithione.  Like chlorhexidine gluconate, zinc pyrithione has not been recognized as safe and effective under the TFM for use in healthcare antiseptic products.  Zinc pyrithione has been approved only for use in anti-dandruff preparations pursuant to OTC Monograph 21 CFR § 358.710.

21.     The Defendants must have FDA approval to market and sell Surgicept and Triseptin as antiseptic healthcare products because neither of the these products is compliant with FDA monograph specifications.

22.     The FDA has never approved Surgicept or Triseptin as being safe and effective antiseptic healthcare consumer products.

23.     In spite of this, beginning in at least 2005 and continuing to the present, Defendants have been illegally marketing and selling Surgicept and Triseptin to hospitals, surgery centers, Military Treatment Facilities, Veterans' Administration Hospitals ("VA Hospitals") doctors and nurses for use as antiseptic healthcare products without FDA approval.

24.     Under applicable statutes and regulations, the seller, manufacturer or distributor of a drug regulated by the FDA may not promote or market the use of the drug for purposes or in a manner other than those approved by the FDA.

25.     The use of a drug for a purpose other than those approved by the FDA is referred to as "off-label" use.

26.     The promotion by a drug company of "off-label" uses of FDA-regulated drugs is strictly illegal and contrary to the explicit policies and regulations of the United States Government and the FDA.

27.     Moreover, under applicable statutes and regulations, selling, manufacturing and/or distributing a drug lacking required FDA approval is strictly illegal and contrary to explicit policies and regulations of the United States.

28.     Defendant CareFusion sells another line of over-the-counter healthcare products regulated by the FDA called ChloraPrep®.  ChloraPrep is an antiseptic patient preoperative preparation that is applied through a patented applicator to patients' skin prior to an incision or injection.  Like Surgicept, ChloraPrep contains chlorhexidine gluconate as an active ingredient and must have FDA approval for the uses for which it is marketed and sold.  CareFusion has submitted a New Drug Application ("NDA") approved by the FDA for ChloraPrep but has failed to do so for Surgicept.

29.     Avagard is a HealthCare Antiseptic HandScrub in the same product category and direct competitor to Surgicept and Triseptin.  Like Surgicept, Avagard contains chlorhexidine gluconate.  Avagard manufacturer 3M commercializes its product lawfully pursuant to an NDA approved by the FDA.

## SPECIFIC ACTS IN FURTHERANCE OF THE SCHEME BY DEFENDANTS TO KNOWINGLY CAUSE FALSE CLAIMS TO BE PRESENTED TO GOVERNMENT-FUNDED PLANS

30.     In January 2010, the Infection Prevention Business Unit of CareFusion (headed by Senior Vice President Mike Kelly) was frustrated that the Unit likely would not make its projected revenue forecasts.

31.     Accordingly, Kelly and other senior CareFusion Executives including Vivek Jain, CareFusion President of the Division dedicated to selling Surgicept and Triseptin called the "MTS" or "Medical and Technical Services Division," formed a scheme to acquire the rights to market and sell two products – Surgicept and Triseptin – that were regulated by the FDA but that had no FDA approval whatsoever.

32.     Before it did the deal with HealthPoint in September 2010, CareFusion was fully informed that Surgicept and Triseptin were being illegally sold without the required FDA approval.

33.     At a leadership meeting on January 27, 2010, of CareFusion Infection Prevention Business Unit Executives Scott Boucher (Sales), Ryan Lipe (Sales), Jan Creidenberg (Sales and Marketing), Cindi Crosby (Medical Affairs), Jolene Mason (Clinical Research), Mike Baltezor (R&D), Mary Wilson (Customer Support) and Relator, Kelly announced the need to identify short-term financial wins due to the foreseeable revenue shortfall of the Unit.  Kelly stated that he intended to fill that revenue gap with the acquisition of new products.

34.     During this January 27 meeting, Kelly identified Surgicept and Triseptin as the targets.

10

35.     Later that week, HealthPoint representatives Lawton Seal and Maxwell Lea came to CareFusion's Leawood, Kansas offices and presented the products' portfolios.  Other CareFusion executives present at the meeting were Jennifer Raeder-Devens, Director of Business Development, and Pat Brune, Vice President of Innovation at the time and currently Vice President of Research and Development.   By this time, Kelly had already placed Raeder-Devens in charge of the Surgicept and Triseptin acquisition and assigned new business and marketing duties for the products to Pat Brune.

36.     At the time of the first meeting with HealthPoint executives Seal and Lea, Relator questioned them about why Surgicept and Triseptin had no FDA approval.  Their response was that the products contained only a preservative amount of chlorhexidine gluconate and zinc pyrithione.  Relator pointed out that the levels of chlorhexidine gluconate in Surgicept are much higher than allowable preservative levels.  Neither Seal nor Lea could respond to this point.  Raeder-Devens stared hostilely at Relator as Relator pointed out how chlorhexidine gluconate could not be preservatives at the levels found in Surgicept.

37.     Kelly asked Relator to give an assessment of the products.

38.     On March 1, 2010, Relator prepared a draft document that assessed whether Surgicept was compliant with FDA rules and regulations.

39.     Relator gave her March 1, 2010 draft assessment to Kelly and Raeder-Devens.  As set forth in her March 1 draft assessment, Relator told Kelly and Raeder-

Devens that she had serious concerns with respect to the legitimacy of Surgicept as currently commercialized.

40.     On March 2, 2010, Relator, Brune and Raeder-Devens from CareFusion participated in a teleconference with HealthPoint representatives Lawton Seal from HealthPoint's Clinical Department and Bobbie Drais from HealthPoint's Regulatory Department.  The purpose of the March 2 teleconference was to discuss Relator's concerns that Surgicept and Triseptin were not legitimately commercialized per FDA rules and regulations.

41.     Relator pointed out that the FDA had never approved either product as being safe or effective as an antiseptic healthcare product and that HealthPoint had been marketing them as being safe and effective for uses that required prior approval.  In addition, Relator informed them that product efficacy for both products was attributed to ingredients that are labeled inactive and that this constituted misbranding and adulteration under the FDCA.  HealthPoint representatives Seal and Drais could not give a response to Relator's concerns.

42.     On March 1, 2010, Relator prepared a draft preliminary regulatory assessment of Surgicept and gave it to Kelly, Raeder-Devens and Brune.  Her focus at the time of this preliminary assessment was on Surgicept (as opposed to Triseptin) because Surgicept contained chlorhexidine and CareFusion had another product – ChloraPrep – that also contained chlorhexidine (and had FDA approval).  The March 1 assessment stated that Surgicept contains chlorhexidine for product efficacy and the TFM specifically states that chlorhexidine is not recognized as safe and effective and requires

FDA approval of a New Drug Application if a company wishes to market and sell a product with chlorhexidine.  The March 1 assessment also stated that HealthPoint marketing materials magnified the illegality of marketing Surgicept without any FDA approval whatsoever by emphasizing that the efficacy of Surgicept is attributed to the "synergistic effects" of the patented technology Viacydin, containing chlorhexidine, benzalkonium chloride and another antimicrobial ingredient, sensiva.

43.     On March 4, 2010, Kelly called a leadership meeting, which was attended by Scott Boucher (Sales), Ryan Lipe (Sales), Jan Creidenberg (Sales and Marketing), Cindi Crosby (Medical Affairs), Jolene Mason (Clinical Research), Mike Baltezor (R&D), Mary Wilson (Customer Support) and Relator.  In advance of the meeting, Relator had provided Brune, at Kelly's request, with a set of slides listing the above off-label problems with Surgicept and Triseptin.  The slides specifically listed Relator's off-label concern about Surgicept as "critical."  The slides were shown by Brune during the meeting; Brune attended only this portion of the meeting.  For people who participated in the meeting by phone, the slides were e-mailed to them during the meeting.

44.     Later in the day on March 4, 2010, Relator had a conference call with a Columbia University academician named Shanta Modak, Raeder-Devens, Brune, Seal and Drais.  Relator was instructed to get things straightened out while Kelly's leadership meeting was on-going.  Rather than straightening things out, however, Modak stated on the call that chlorhexidine was critical to the effectiveness of Surgicept.  Outrageously, the HealthPoint executives stated on that teleconference that if the patented technology containing the active ingredients (chlorhexidine and zinc pyrithione) was labeled

"inactive," this would render the product compliant and further that these inactives could be referred to as preservatives.

45.     Throughout this time, Kelly placed enormous amounts of pressure on Relator to "be a team player" and support the acquisition of Surgicept and Triseptin so that the Infection Prevention Business Unit could present the opportunity as 100% supported.

46.     Relator told Jain, Kelly and other CareFusion executives that she simply could not support the acquisition because of the compliance risks.

47.     On or about March 15, 2010, Relator's boss Tom Rasnic, CareFusion Vice President of Regulatory and Quality, told her that Jain instructed him (Rasnic) to make sure that Regulatory Affairs "got on board" with the decision to purchase Surgicept and Triseptin.

48.     Jain's warnings to Relator in March 2010 were a reiteration of the same warnings Rasnic and Kelly had administered to Relator in Fall 2010, a few weeks after she started her position as Vice President of Regulatory Affairs with CareFusion. Specifically, on about On October 1, 2009, Rasnic told Relator that in the CareFusion organization, Regulatory functions are "a service" and "there isn't an issue until the business unit determines there is an issue."  Rasnic instructed Relator that it was important to be on the "same page" as the Business Unit.  On October 7, 2009, Kelly took Relator to lunch and told her she needed to communicate any compliance concerns with him (Kelly) first, that she would have less interaction with her boss Rasnic and that she should speak to him (Kelly) first before addressing compliance issues with Rasnic.

49.     Jain and Kelly consistently stated in meetings that Regulatory was hindering their ability to compete and meet forecasted sales numbers for the Infection Prevention Business Unit.

50.     Rasnic's boss is Don Abbey, CareFusion Executive Vice President Regulatory and Quality Services.  At the end of March 2010, CareFusion Executives were exasperated with Relator because she remained consistent in her regulatory opinion of Surgicept and Triseptin.

51.     In a final summary to Abbey on August 10, 2010, and at Abbey's request, Relator outlined all of the Infection Prevention Business Unit including those with Surgicept and Triseptin and informed him that he should be aware of the potential liability for the illegal way in which the products were being marketed and sold.  Not only did HealthPoint market and sell Surgicept and Triseptin products with no FDA approval whatsoever, HealthPoint marketing materials made the following fraudulent and illegal claims about Surgicept and Triseptin:

        a.      Surgicept and Triseptin prevent infection by listing the drugs as
                part of HealthPoint's "Infection Prevention Portfolio" on its
                website and by issuing a press release that CareFusion had added
                Surgicept and the Triseptin products to its "Infection Prevention
                Portfolio;"

        b.      Surgicept and Triseptin prevent infection by selling the drugs
                through CareFusion's "Infection Prevention Business Unit" with

"Infection Prevention" sales representatives calling on "Infection Prevention" hospital units;

c.  Surgicept "is FDA Compliant" (HealthPoint Website);

d.  Surgicept "meets and exceeds" FDA requirements:  "CareFusion Expands Skin Antisepsis Portfolio:  Innovative Surgical Scrub Proven to Meet or Exceed Federal Requirements" "Surgicept is an effective waterless surgical hand scrub.  Its unique patented formulation is proven to meet and exceed FDA requirements for surgical hand scrubs."  (9/27/10 CareFusion Press Release on CareFusion Website; 9/27/10); (9/27/10 CareFusion Press Release reprinted in Healthnews) (some emphasis added; bold in original);

e.  Surgicept "Meets CDC-approved guidelines" (HealthPoint Website);

f.  Surgicept Waterless Surgical Hand Antiseptic "70% ethyl alcohol provides rapid, broad-spectrum, antiseptic action … effective against MRSA and VREF;"  (HealthPoint Website);

g.  Surgicept Waterless Surgical Hand Antiseptic "Uses:  Healthcare Personnel Handwash:  Handwash to help reduce bacteria that potentially can cause disease.  Recommended for repeated use." ("Use" Section of Surgicept Waterless Surgical hand Antiseptic Label);

h.   "It has been established that HAIs [Hospital Acquired Infections] can be reduced with proper hand antiseptics by health care professionals prior to surgery … Recommendations and guidelines, including those from the U.S. Centers for Disease Control and Prevention (CDC) and the World Health Organization (WHO), state that health care professionals should clean their hands with an alcohol-based antimicrobial solution[.]"  "To reduce the risk of infection, clinical evidence and practice recommendations clearly state the importance of disinfecting the patient's and the health care professional's skin prior to any surgical procedure," said Jason Strohm, vice president and general manager, CareFusion Infection Prevention.  "With ChloraPrep for patient skin and Surgicept for the hands of surgical health care workers, we now offer a comprehensive line of clinically proven products to help reduce the risk of HAIs at their source:  the skin." (Exhibit 23) (9/27/10 CareFusion Press Release on CareFusion Website); (Exhibit 38) (9/27/10 CareFusion Press Release reprinted in Healthnews);

i.   "Both Triseptin Water-Aided And Triseptin Waterless Scrubs Are FDA And CDC Compliant, And Classified By the FDA As Over-The-Counter (OTC) Drug Products.  They Also Feature The Patented Trizenol Technology, Which Will Allow The User To

17

Build The Overall Level Of Efficiency That Can Be Obtained By Using The Same Technology In Both Products." (Triseptin Waterless Surgical Scrub, 32 Oz Bottle by HealthPoint Advertisement/Description of Product on Greatmedicalsupplies.com) (capitalization in original);

j.      "TRISEPTIN Waterless Surgical Scrub joins other TRISEPTIN antiseptics to present the first full line of brush-free surgical scrubbing products with Trizenol technology.  For best results, use all TRISEPTIN products together to reduce the chance of surgical site infections;" (HealthPoint Website);

k.      Triseptin meets the CDC Guidelines for Hand Health in Healthcare Settings recommending alcohol-based solution that have prolonged antimicrobial action;  (11/2002 HealthPoint Press Release);

l.      "Triseptin will save valuable time in the OR and faster application times should mean greater staff compliance . . . and greater compliance yields superior outcomes for patients by lowering the risk of hospital-acquired infections as well as saving healthcare dollars." (HealthPoint Website);

m.      Triseptin is in compliance with CDC Guidelines and that "[i]n compliance with CDC Guidelines, showering with TRISEPTIN Hand and Body Antiseptic twice within 24 hours before surgery

significantly reduces the number of microorganisms on the skin that can cause surgical site infections."  (HealthPoint Website);

n.    "Triseptin hand scrub … is formulated with Trizenol® topical antiseptic, which combines the fast-acting microbial action of alcohol with a preservative [zinc pyrithione] to prolong persistence and surfactants to condition the skin and remove dirt and organic debris." (Cardinal Health Website);

o.    Triseptin Water-Aided Surgical Scrub and Triseptin Waterless Surgical Scrub, "Uses:  Surgical Hand Scrub:  Significantly reduces the number of microorganisms on the hands and forearms prior to surgery or patient care."  ("Use" Sections on Triseptin Water-Aided Surgical Scrub and Triseptin Waterless Surgical Scrub Labels); and

p.    Triseptin Surgical Hand and Body Antiseptic, "Use:  Presurgical Body Antiseptic; Significantly reduces the number of microorganisms on the hands, forearms and body prior to surgery or patient care.  Helps reduce bacteria that can potentially cause skin infection."  ("Use" Section on Triseptin Surgical Hand and Body Antiseptic Label).

52.    Serious risk to healthcare providers and surgical patients is posed due to the mislabeled products.  Chlorhexidine gluconate has been the cause of serious and life

threatening anaphylactic reactions.  Since Surgicept labeling does not offer warnings, healthcare professionals using the scrub are at great risk.

53.     There are other health implications by Defendants' false and misleading statements.  There is at least one study showing that repeated use of Surgicept deteriorates the skin.

54.     CareFusion does not have any Compliance Committee in place as required by OIG Compliance Guideline regulations.  Instead of heeding Relator's warnings about illegal off-label marketing of Surgicept and Triseptin, CareFusion terminated Relator and eliminated her position (Vice President of Regulatory Affairs) from the company.

## DEFENDANTS HAVE RECEIVED AND CONTINUE TO RECEIVE MILLIONS OF DOLLARS FROM GOVERNMENT-FUNDED HEALTH CARE PLANS LIKE MEDICARE AND MEDICAID FOR SURGICEPT AND TRISEPTIN PRODUCTS THEY PROMOTE WITH ILLEGAL OFF-LABEL TACTICS

55.     More than 100 million people – 1 in 3 – now have government-sponsored health care coverage through Medicaid, Medicare, military and federal and state employee health care plans (collectively referred to here as "Government-Funded Plans").

56.     It is lucrative for drug companies like Defendants to have their drug approved by Government-Funded Plans because so many Americans are covered by Government-Funded Plans.  In addition, unlike private insurance plans, the drugs covered by Government-Funded Plans are not frequently reviewed to determine whether the coverage status should change.  Once a drug is approved as a drug covered by a Government-Funded Plan, it generally remains a covered drug regardless of whether the product formulation is later changed and regardless of whether unapproved uses are later

claimed after initial approval.   Thus, the Government-Funded Plans were and continue to be attractive targets for Defendants because the Government-Funded Plans would pay for Surgicept and Triseptin year after year with no questions asked.

57.    Defendants seized the opportunity to increase their profits from sales to the millions of patients covered by Government-Funded Plans by orchestrating a scheme to aggressively market and sell Surgicept and Triseptin as antiseptic hand wash scrubs with no FDA approval whatsoever.

58.    The scheme consisted of an elaborate and blatant illegal commercialization and promotion of off-label use of Surgicept and Triseptin as OTC monograph compliant antiseptic healthcare products, all in direct contravention of the rules and regulations of the FDA.

59.    The scheme also consisted of exclusive and lucrative contracts with Military Treatment Facilities for Surgicept and Triseptin.

60.    Relator advised CareFusion Executives (all of whom had been Cardinal Health executives) that the commercialization, marketing and promotion of Surgicept and Triseptin were illegal and off-label.

61.    Nevertheless, CareFusion continued with its acquisition of Surgicept and Triseptin and are engaged in a partnership with HealthPoint to continue commercialization of off-label marketing these drugs.  During the time that CareFusion Executives Mike Kelly and Vivek Jain were Executives at Cardinal Health, they distributed Triseptin under Cardinal Health.

62.     FDA-compliant surgical handwashes and handscrubs are part of Medicare, Medicaid and the Center for Disease Control's specifications for surgery preparation. Both Surgicept and Triseptin products are reimbursed by Government-Funded Plans yet neither is FDA compliant.

63.     Both Surgicept and Triseptin are sold to Veterans' Affairs Hospitals and Military Treatment Facilities.

**THE TARGET OF CAREFUSION'S OFF-LABEL AND ILLEGAL MARKETING WAS GOVERNMENT-FUNDED PLANS**

64.     At the March 4, 2010 leadership meeting led by Mike Kelly, CareFusion Executives developed a plan to capitalize on products that were required under the Center for Medicare and Medicaid Services (CMS) requirements for infection control.  It was discussed by Kelly at the meeting that selling Surgicept and Triseptin to hospitals would be a lucrative market for CareFusion.

65.     The market for healthcare surgical scrubs and handwashes is highly lucrative.  Hospitals are required to use FDA compliant surgical handwash/scrubs pursuant to the CMS infection control guidelines.

66.     A significant percentage of the Surgicept and Triseptin charges were paid for, directly or indirectly, by the United States Government in the form of reimbursements through Government-Funded Plans and Government Hospitals, all of which were unaware of the falsity of the claims and which relied on the accuracy thereof.

67.     CareFusion Executives recognized that the CMS infection control guidelines requiring the use of FDA-compliant surgical scrubs and handwashes as part of surgeries made it highly lucrative to promote the false and misleading representation that

Surgicept and Triseptin were FDA-complaint.  In addition, CareFusion Executives

recognized that both products enjoyed exclusive contracts with Military Treatment

Facilities, as well as VA Hospitals.  If the appropriate pathway for approval of these

products were pursued, it would cost millions of dollars and reduced profit margins.

68.     The potential to cash in on Medicare and Medicaid reimbursement and

military and VA Hospital contracts is what fueled CareFusoin to pursue a partnership

with HealthPoint that would allow CareFusion to market and sell Surgicept and Triceptin.

This deal came to fruition on September 27, 2010.

69.     Upon information and belief, Defendants caused the submission of claims

for off-label charges to federally-funded programs in almost all fifty states and the

District of Columbia, resulting in false claims paid by the United States Government and

all fifty states and the District of Columbia.

70.     Upon information and belief, Defendants fraudulently entered into and

executed contracts with Military Treatment Facilities and VA Hospitals, resulting in false

claims paid by the United States Government.

71.     Defendant CareFusion currently has over 100 sales managers and sales

representatives employing off-label and deceptive marketing tactics for Surgicept and

Triseptin on Military Treatment Facilities, VA Hospitals, doctors, nurses, surgery centers

and the Infection Prevention Units of over 4,000 hospitals.

72.     From 2005 until the present, 100% of the charges for Surgicept and

Triseptin submitted to Government-Funded Plans for reimbursement were a result of off-

label marketing practices by Defendants.

73.     From 2005 until the present, 100% of the payments made by Military Treatment Facilities and VA Hospitals on contracts with Defendants for Surgicept and Triseptin were the result of Defendants' practice of selling these products without the required FDA approval and misrepresentation of FDA compliance.

74.     One in three Americans is covered by a Government-Funded Plan.

75.     There are approximately 30 million surgeries performed every year.

76.     The cost to the Government-Funded Plans as a result of Defendants' illegal marketing activities was high.  The pricing for Surgicept is approximately $80.49 per 800 ml. For fiscal year 2010, revenue from the Surgicept and Triseptin product lines was projected to be $5-10 million.

77.     Upon information and belief, it is estimated that millions of dollars were paid by Government-Funded Plans, Military Treatment Facilities and VA Hospitals, and were a result of Defendants' illegal commercialization and marketing scheme from at least 2005 to the present.

78.     Defendant CareFusion has not taken the necessary and appropriate steps to train its employees, including its sales representatives, about compliance issues. CareFusion conducts no compliance training sessions, has no compliance employee manual and has no compliance committee.

79.     Defendant CareFusion is currently under a Consent Decree for illegal quality systems activities.

**COUNT I:**
**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)**
**(Off-Label Marketing)**

80.     Relator incorporates by reference paragraphs 1 through 79 as if set forth fully here.

81.     From 2005 and continuing in the present, 100% of the purposes for which Defendants market and sell Surgicept and Triseptin are unapproved by the FDA and are illegal.

82.     Surgicept and Triseptin are used by healthcare professionals prior to surgeries, injections and contact with patients or persons whose FDA-regulated drugs are paid for in whole or in part by state-administered medical assistance programs that receive reimbursement from the United States Government, including Medicaid, Medicare, and other Government-Funded Plans.  The healthcare antiseptics are used in compliance with CMS requirements for infection control.

83.     Defendants induced the submission of off-label charges for Surgicept and Triseptin to Government-Funded Plans for reimbursement.  The induced submission of such charges impliedly certified compliance with Medicaid, Medicare and other government statutes and regulations, including the rules and regulations of the FDA.

84.     None of the promoted uses for the Surgicept and Triseptin charges were approved by the FDA or recognized as a medically accepted use by the American Hospital Formulary Service Drug Information, the United States Pharmacopeia-Drug Information, the DRUGDEX Information System, the American Medical Association Drug Evaluations, the National Formulary, the United States Homeopathic

Pharmacopoeia, or in New Drugs or Accepted Dental Remedies, or supported by any

valid scientific study published in any peer-reviewed medical literature, or, upon

information and belief, approved by any hospital pharmacy and drug therapeutics medical

staff committee.

85.     Defendants submitted or caused to be submitted claims to the United

States Government for payment or approval.

86.     Such claims were false or fraudulent.

87.     As outlined above in paragraphs 15-79, Defendants perpetuated fraud on

the government.

88.     Defendants had actual knowledge, and/or acted in deliberate ignorance of

the truth or falsity of the information, and/or recklessly disregarded a risk, that charges

for off-label and unapproved Surgicept and Triseptin were not eligible for reimbursement

from Government-Funded Plans as evidenced by the actions outlined above in paragraphs

15-79.  In addition, Defendants knew or should have known of the passage of 42 U.S.C. §

1396r-8 and 42 U.S.C. §1395x(t)(1) and the statutory limitations found therein on

government reimbursement for drugs.  In addition, Defendants have entered into

Medicaid and Medicare Rebate Agreements and other contracts with the United States

that specifically informed Defendants what constituted covered drugs under Government-

Funded Plans and notified Defendants that drugs that were not used for a medically

accepted use were not covered drugs.  Notwithstanding Defendants' knowledge that the

charges for Surgicept and Triseptin that Defendants promoted off-label was not eligible

for reimbursement from Government-Funded Plans, Defendants knowingly and

intentionally took steps to increase the charges for Surgicept and Triseptin submitted to Government-Funded Plans.  But for Defendants' promotion of off-label uses for all Surgicept and Triseptin products with no FDA approval whatsoever, the ineligible claims for payment of Surgicept and Triseptin charges would have never been filed because they were not in compliance with Medicaid, Medicare and other government statutes and regulations.

89.     Defendants acted knowingly, either with actual knowledge that the information they were using to market Surgicept and Triseptin was off-label and unapproved and that Surgicept and Triseptin charges as a result of its off-label and unapproved product marketing efforts were not eligible for reimbursement from Government-Funded Plans (as evidenced by the actions outlined above in paragraphs 15 through 79), or in deliberate ignorance or reckless disregard of the truth or falsity of the information.

90.     Every off-label Surgicept and Triseptin charge caused by Defendants' off-label marketing practices and submitted to Government-Funded Plans for reimbursement is a false claim caused by Defendants for purposes of 31 U.S.C. § 3729 (a)(1).

91.     Pursuant to 31 U.S.C. §§ 3729 (a)(7) and 3730, Defendants are liable to the United States Government for actual damages, trebled, a civil penalty of not less than $5,500 and not more than $11,000 for each off-label or unapproved product commercialization charge for Surgicept or Triseptin reimbursed by a Government-Funded Plan, plus attorneys' fees and costs.  The highest possible penalties are appropriate in this case in light of the actual knowledge of Defendant CareFusion.  The

highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully requests that the Court enter judgment against Defendants and in favor of the United States as follows:

    a.    that the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

    b.    that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States and/or its grantees;

    c.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

    d.    that the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

    e.    that Relator be awarded the maximum amount allowed to her pursuant to the False Claims Act and the state False Claims Acts set forth below;

       f.      that Relator be awarded the maximum amount allowed to her of any portion of a judgment or settlement fund that goes to any state government; and

       g.      that this Court award such other and further relief as it deems proper.

**COUNT II:**
**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)**
**(Knowing Breach of Government Contracts)**

92.     Relator incorporates by reference paragraphs 1 through 91 as if set forth fully here.

93.     From 2005 and continuing in the present, Defendants enjoyed lucrative and exclusive government contracts with Military Treatment Facilities and VA Hospitals for Surgicept and Triseptin. During that time, 100% of the contract payments from the government to Defendants was with Defendants' agreement that they would abide by federal laws and regulations, including those of the FDA.

94.     Defendants failed to abide by federal laws and regulations, including those of the FDA, when they sold Surgicept and Triseptin to government-owned healthcare facilities without the required FDA approval.

95.     Selling non-FDA compliant drugs to government-owned healthcare facilities was a breach of Defendants' obligations under the regulations and contracts with the Government.

96.     Defendants knew or should have known they were breaching their contracts with the Government.

29

97.     Defendants submitted or caused to be submitted claims to the United States Government for payment or approval.

98.     Such claims were false or fraudulent.

99.     As outlined above in paragraphs 15-79, Defendants perpetuated fraud on the government.

100.    Defendants had actual knowledge, and/or acted in deliberate ignorance of the truth or falsity of the information, and/or recklessly disregarded a risk, that non-FDA approved drugs were not eligible for remuneration from contracts with government-owned healthcare facilities.  Notwithstanding Defendants' knowledge that the government contracts for Surgicept and Triseptin required compliance with FDA rules and regulations, Defendants knowingly and intentionally took steps to contract with government-owned healthcare facilities for two drug products that were illegal.  If the government-owned healthcare facilities knew that Surgicept and Triseptin violated FDA rules and regulations, they would not have contracted and paid for those drugs.

101.    Defendants acted knowingly, either with actual knowledge that they were breaching their government contracts for Surgicept and Triseptin (as evidenced by the actions and evidence outlined above in paragraphs 15 through 79), or in deliberate ignorance or reckless disregard of the truth or falsity of the information.

102.    Every contractual payment by a government-owned healthcare facility for Surgicept and Triseptin is a false claim caused by Defendants for purposes of 31 U.S.C. § 3729 (a)(1).

103.    Pursuant to 31 U.S.C. §§ 3729 (a)(7) and 3730, Defendants are liable to the United States Government for actual damages, trebled, a civil penalty of not less than $5,500 and not more than $11,000 for each contract payment for Surgicept or Triseptin from a government-owned healthcare facility, plus attorneys' fees and costs.  The highest possible penalties are appropriate in this case in light of the actual knowledge of Defendants that they were breaching their government contracts and affirmatively hiding the fact that Surgicept and Triseptin contained ingredients that required the drugs to have FDA approval.  The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully requests that the Court enter judgment against Defendants and in favor of the United States as follows:

h.    that the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

i.    that civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States and/or its grantees;

j.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

k.    that the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

l.    that Relator be awarded the maximum amount allowed to her pursuant to the False Claims Act and the state False Claims Acts set forth below;

m.    that Relator be awarded the maximum amount allowed to her of any portion of a judgment or settlement fund that goes to any state government; and

n.    that this Court award such other and further relief as it deems proper.

## COUNT III:
## Violation of State Law: Arkansas Medicaid Fraud Claims Act

104.    Relator, on behalf of herself and the State of Arkansas, incorporates by reference paragraphs 1 through 103 as if set forth fully here.

105.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

106.    Medicaid is jointly funded by the federal and state governments.

107.    Defendants submitted or caused to be submitted claims to the Arkansas Medicaid and/or other government-funded system for payment or approval.

108.     Pursuant to the Arkansas Medicaid Fraud False Claims Act, codified at Ark. Stat. Ann. § 20-77-901, *et seq*., Defendants are liable to the United States/State of Arkansas for three times the amount of damages that the United States/State of Arkansas sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim. The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Arkansas as follows:

a.      that the United States/State of Arkansas be awarded damages in the amount of three times the damages sustained by the United States/State of Arkansas because of the false claims alleged within this Complaint;

b.      that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Arkansas and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the Arkansas Medicaid Fraud False Claims Act for

which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the Arkansas Medicaid Fraud False Claims Act; and

f.      that this Court award such other and further relief as it deems

proper.

## COUNT IV:
## Violation of State Law:  California False Claims Act

109.    Relator, on behalf of herself and the State of California, incorporates by

reference paragraphs 1 through 108 as if set forth fully here.

110.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

111.    Medicaid is jointly funded by the federal and state governments.

112.    Defendants submitted or caused to be submitted claims to the California

Medicaid system (also known as "MediCal") and/or other state-funded system for

payment or approval.

113.    Pursuant to the California False Claims Act, codified at California

Government Code § 12650, *et seq.*, Defendants are liable to the United States/State of

California for three times the amount of damages that the United States/State of

California or political subdivision sustained, costs of the action and a penalty of up to

$10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.  The amount in controversy here exceeds $500.

WHEREFORE, Relator respectfully requests that the Court enter judgment against Defendants and in favor of the United States/State of California as follows:

a.   that the United States/State of California be awarded damages in the amount of three times the damages sustained by the United States/State of California because of the false claims alleged within this Complaint;

b.    that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of California and/or its grantees;

c.   that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.   that the Court grant permanent injunctive relief to prevent any recurrence of the California False Claims Act for which redress is sought in this Complaint;

e.   that the Relator be awarded the maximum amount allowed to her pursuant to the California False Claims Act; and

f.      that this Court award such other and further relief as it deems

proper.

**COUNT IV:**
**Violation of State Law:  Colorado Medical Assistance Act**

114.     Relator, on behalf of herself and the State of Colorado, incorporates by

reference paragraphs 1 through 113 as if set forth fully here.

115.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

116.     Medicaid is jointly funded by the federal and state governments.

117.     Defendants submitted or caused to be submitted claims to the Colorado

Medicaid system and/or other government-funded system for payment or approval.

118.     Pursuant to the Colorado Medical Assistance Act, codified at CO. STAT.

§§ 25.5-4-101, 25.5-4-304, *et seq.*, Defendants are liable to the United States/State of

Colorado for full restitution, two times the amount of damages that the United

States/State of Colorado sustained and a civil penalty of $5,000 for each false claim, costs

of the action and attorneys' fees. The highest possible penalties are appropriate in this

case in light of the Defendants' actual knowledge. The highest possible penalties are also

appropriate in this case to send a message to Defendants' industry that they must abide by

federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against

Defendants and in favor of the United States/State of Colorado as follows:

a.      that the United States/State of Colorado be awarded damages in the amount of two times the damages sustained by the United States/State of Colorado because of the false claims alleged within this Complaint;

b.      that civil penalties of $5,000 for each and every false claim that Defendants presented to the United States/State of Colorado and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence of the Colorado Medical Assistance Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant to the Colorado Medical Assistance Act; and

f.      that this Court award such other and further relief as it deems proper.

### COUNT V:
### Violation of State Law:  Connecticut Health Insurance Fraud Act

119.    Relator, on behalf of herself and the State of Connecticut, incorporates by reference paragraphs 1 through 118 as if set forth fully here.

120.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within

37

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

121.    Medicaid is jointly funded by the federal and state governments.

122.    Defendants submitted or caused to be submitted claims to the Connecticut Medicaid system and/or other government-funded system for payment or approval.

123.    Pursuant to the Connecticut False Claims Act and/or Health Care False Claims Act and/or Health Insurance Fraud Act, codified at Conn. Stat. Ann. §§17b-301a, *et seq.* and/or §§ 53-440, *et seq.*, Defendants are liable to the United States/State of Connecticut for three times the amount of damages that the United States/State of Arkansas sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim. The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Connecticut as follows:

g.    that the United States/State of Connecticut be awarded damages in the amount of three times the damages sustained by the United States/State of Connecticut because of the false claims alleged within this Complaint;

h.     that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Connecticut and/or its grantees;

i.     that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

j.     that the Court grant permanent injunctive relief to prevent any recurrence of the Connecticut False Claims Act and/or Health Care False Claims Act and/or Health Insurance Fraud Act for which redress is sought in this Complaint;

k.     that the Relator be awarded the maximum amount allowed to her pursuant to the Connecticut False Claims Act and/or Health Care False Claims Act and/or Health Insurance Fraud Act; and

l.     that this Court award such other and further relief as it deems proper.

## COUNT VI:
## Violation of State Law:  Delaware False Claims and Reporting Act

124.     Relator, on behalf of herself and the State of Delaware, incorporates by reference paragraphs 1 through 123 as if set forth fully here.

125.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

126.     Medicaid is jointly funded by the federal and state governments.

127.     Defendants submitted or caused to be submitted claims to the Delaware Medicaid system and/or other government-funded system for payment or approval.

128.     Pursuant to the Delaware False Claims and Reporting Act, codified at Del. Code Ann. tit. 6, § 1201, *et seq*., Defendants are liable to the United States/State of Delaware for three times the amount of damages that the United States/state government sustained, costs of the action and a penalty of not less than $5,500 and not more than $11,000 for each false claim. The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully requests that the Court enter judgment against Defendants and in favor of the United States/State of Delaware as follows:

a.     that the United States/State of Delaware be awarded damages in the amount of three times the damages sustained by the United States/State of Delaware because of the false claims alleged within this Complaint;

b.     that civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States/State of Delaware and/or its grantees;

40

c.      that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence of the Delaware False Claims and Reporting Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant to the Delaware False Claims and Reporting Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT VII:
## Violation of District of Columbia False Claims Act

129.    Relator, on behalf of herself and the District of Columbia, incorporates by reference paragraphs 1 through 128 as if set forth fully here.

130.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

131.    Medicaid is jointly funded by the federal and state governments.

132.    Defendants submitted or caused to be submitted claims to the District of Columbia Medicaid system and/or other government-funded system for payment or approval.

133.    Pursuant to the District of Columbia False Claims Act, codified at D.C. Code Ann. § 2-308.03, *et seq*., Defendants are liable to the United States/District of Columbia for three times the amount of damages that the United States/District of Columbia sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim. The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/District of Columbia as follows:

    a.    that the United States/District of Columbia be awarded damages in the amount of three times the damages sustained by the United States/District of Columbia because of the false claims alleged within this Complaint;

    b.    that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/District of Columbia and/or its grantees;

    c.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

42

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the District of Columbia False Claims Act for which

redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the District of Columbia False Claims Act; and

f.      that this Court award such other and further relief as it deems

proper.

## COUNT VIII:
## Violation of State Law:  Florida False Claims Act

134.    Relator, on behalf of herself and the State of Florida, incorporates by

reference paragraphs 1 through 133 as if set forth fully here.

135.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

136.    Medicaid is jointly funded by the federal and state governments.

137.    Defendants submitted or caused to be submitted claims to the Florida

Medicaid system and/or other government-funded system for payment or approval.

138.    Pursuant to the Florida False Claims Act, codified at Fla. Stat. § 68.081, *et*

*seq.*, Defendants are liable to the United States/State of Florida for three times the amount

of damages that the United States/State of Florida sustained, costs of the action and a

penalty of not less than $5,500 and not more than $11,000 for each false claim. The

highest possible penalties are appropriate in this case in light of the Defendants' actual

knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Florida as follows:

a.   that the United States/State of Florida be awarded damages in the amount of three times the damages sustained by the United States/State of Florida because of the false claims alleged within this Complaint;

b.   that civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States/State of Florida and/or its grantees;

c.   that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.   that the Court grant permanent injunctive relief to prevent any recurrence of the Florida False Claims Act for which redress is sought in this Complaint;

e.   that the Relator be awarded the maximum amount allowed to her pursuant to the Florida False Claims Act; and

f.   that this Court award such other and further relief as it deems proper.

## COUNT IX:
## Violation of State Law:  Georgia False Medicaid Claims Act

139.     Relator, on behalf of herself and the State of Georgia, incorporates by reference paragraphs 1 through 138 as if set forth fully here.

140.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

141.     Medicaid is jointly funded by the federal and state governments.

142.     Defendants submitted or caused to be submitted claims to the Georgia Medicaid system and/or other government-funded system for payment or approval.

143.     Pursuant to the Georgia False Medicaid Claims Act, codified at GA. STAT. §§ 49-4-168, *et seq*., Defendants are liable to the United States/State of Georgia for three times the amount of damages that the United States/State of Georgia sustained, costs of the action and a penalty of not less than $5,500 and not more than $11,000 for each false claim. The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Georgia as follows:

a.     that the United States/State of Georgia be awarded damages in the amount of three times the damages sustained by the United

Case 2:10-cv-02611-JTM-KGG   Document 1   Filed 11/10/10   Page 46 of 91

States/State of Georgia because of the false claims alleged within

this Complaint;

b.    that civil penalties of $11,000 for each and every false claim that

Defendants presented to the United States/State of Georgia and/or

its grantees;

c.    that pre- and post-judgment interest be awarded along with

reasonable attorneys' fees, costs, and expenses that Relator

necessarily incurred in bringing and pressing this case;

d.    that the Court grant permanent injunctive relief to prevent any

recurrence of the Georgia False Medicaid Claims Act for which

redress is sought in this Complaint;

e.    that the Relator be awarded the maximum amount allowed to her

pursuant to the Georgia False Medicaid Claims Act; and

f.    that this Court award such other and further relief as it deems

proper.

## COUNT X:
## Violation of State Law:  Hawaii False Claims Act

144.    Relator, on behalf of herself and the State of Hawaii, incorporates by

reference paragraphs 1 through 143 as if set forth fully here.

145.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

46

146.    Medicaid is jointly funded by the federal and state governments.

147.    Defendants submitted or caused to be submitted claims to the Hawaii Medicaid system and/or other government-funded system for payment or approval.

148.    Pursuant to the Hawaii False Claims Act, codified at Haw. Rev. Stat. § 661-21, *et seq.*, Defendants are liable to the United States/State of Hawaii for three times the amount of damages that the United States/State of Hawaii sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.  The amount in controversy exceeds $500.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Hawaii as follows:

a.      that the United States/State of Hawaii be awarded damages in the amount of three times the damages sustained by the United States/State of Hawaii because of the false claims alleged within this  Complaint;

b.      that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Hawaii and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with

reasonable attorneys' fees, costs, and expenses that Relator

necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the Hawaii False Claims Act for which redress is

sought in this  Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the Hawaii False Claims Act; and

f.      that this Court award such other and further relief as it deems

proper.


## COUNT XI:
## Violation of Illinois False Claims Act

149.    Relator, on behalf of herself and the State of Illinois, incorporates by

reference paragraphs 1 through 148 as if set forth fully here.

150.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

151.    Medicaid is jointly funded by the federal and state governments.

152.    Defendants submitted or caused to be submitted claims to the Illinois

Medicaid system and/or other government-funded system for payment or approval.

48

153.     Pursuant to the Illinois False Claims Act (formerly known as the Illinois Whistleblower Reward and Protection Act, codified at Il. Comp. Stat. Ann. § 175/1, *et seq.*, Defendants are liable to the United States/State of Illinois for three times the amount of damages that the United States/State of Illinois sustained, costs of the action and a penalty of not less than $5,500 and not more than $11,000 for each false claim. The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Illinois as follows:

a.     that the United States/State of Illinois be awarded damages in the amount of three times the damages sustained by the United States/State of Illinois because of the false claims alleged within this Complaint;

b.     that civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States/State of Illinois and/or its grantees;

c.     that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the Illinois Whistleblower Reward and Protection Act

for which redress is sought in this  Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the Illinois Whistleblower Reward and Protection Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XII:
## Violation of State Law:  Indiana False Claims and Whistleblower Protection Act

154.    Relator, on behalf of herself and the State of Indiana, incorporates by

reference paragraphs 1 through 153 as if set forth fully here.

155.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

156.    Medicaid is jointly funded by the federal and state governments.

157.    Defendants submitted or caused to be submitted claims to the Indiana

Medicaid system and/or other government-funded system for payment or approval.

158.    Pursuant to the Indiana False Claims and Whistleblower Protection Act,

codified at Indiana Code 5-11-5.5, *et seq*., Defendants are liable to the United States/State

of Indiana for three times the amount of damages that the state sustained, costs of the

action and a penalty of not less than $5,000 for each false claim. The highest possible

penalties are appropriate in this case in light of the Defendants' actual knowledge. The

highest possible penalties are also appropriate in this case to send a message to
Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against
Defendants and in favor of the United States/State of Indiana as follows:

a.   that the United States/State of Indiana be awarded damages in the
amount of three times the damages sustained by the United
States/State of Indiana because of the false claims alleged within
this  Complaint;

b.   that civil penalties of not less than $5,000 and the maximum
allowable by law be imposed for each and every false claim that
Defendants presented to the United States/State of Indiana and/or
its grantees;

c.   that pre- and post-judgment interest be awarded along with
reasonable attorneys' fees, costs, and expenses that Relator
necessarily incurred in bringing and pressing this case;

d.   that the Court grant permanent injunctive relief to prevent any
recurrence of the Indiana False Claims and Whistleblower
Protection Act for which redress is sought in this  Complaint;

e.   that the Relator be awarded the maximum amount allowed to her
pursuant to the Indiana False Claims and Whistleblower Protection
Act; and

f.      that this Court award such other and further relief as it deems

proper.

## COUNT XV:
## Violation of State Law:  Louisiana False Claims Act

159.    Relator, on behalf of herself and the State of Louisiana Medical Assistance

Programs, incorporates by reference paragraphs 1 through 158 as if set forth fully here.

160.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

161.    Medicaid is jointly funded by the federal and state governments.

162.    Defendants submitted or caused to be submitted claims to the Louisiana

Medicaid system and/or other government-funded system for payment or approval.

163.    Pursuant to the Louisiana False Claims Act and/or the Louisiana Medical

Assistance Programs Integrity Law, codified at La. Rev. Stat. Ann. § 46:437.1, *et seq.*,

Defendants are liable to the United States/State of Louisiana Medical Assistance

Programs for three times the amount of damages that the United States/State of Louisiana

Medical Assistance Programs sustained, costs of the action and a penalty of not more

than $10,000 for each false claim. The highest possible penalties are appropriate in this

case in light of the Defendants' actual knowledge. The highest possible penalties are also

appropriate in this case to send a message to Defendants' industry that they must abide by

federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Louisiana Medical Assistance Programs as follows:

a.      that the United States/State of Louisiana Medical Assistance Programs be awarded damages in the amount of three times the damages sustained by the United States/State of Louisiana because of the false claims alleged within this  Complaint;

b.      that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Louisiana Medical Assistance Programs and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence of the Louisiana False Claims Act for which redress is sought in this  Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant to the Louisiana False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XIV:
## Violation of State Law:  Maryland False Health Claims Act

164.    Relator, on behalf of herself and the State of Maryland, incorporates by reference paragraphs 1 through 163 as if set forth fully here.

165.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

166.    Medicaid is jointly funded by the federal and state governments.

167.    Defendants submitted or caused to be submitted claims to the Maryland Medicaid system and/or other government-funded system for payment or approval.

168.    Pursuant to the Maryland False Health Claims Act, as enacted by 2010 Maryland Laws Ch. 4 (S.B. 279), Defendants are liable to the United States/State of Maryland for three times the amount of damages that the United States/Maryland sustained, costs of the action and a penalty of $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Maryland as follows:

a.    that the United States/State of Maryland be awarded damages in the amount of three times the damages sustained by the United States/State of Maryland because of the false claims alleged within this  Complaint;

54

b.      that civil penalties of $10,000 be imposed for each and every false claim

that Defendants presented to the United States/State of Maryland and/or its

grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable

attorneys' fees, costs, and expenses that Relator necessarily incurred in

bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence

of the Maryland False Health Claims Act for which redress is sought in

this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant

to the Maryland False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

**COUNT XV:**
**Violation of State Law:  Massachusetts False Claims Act**

169.     Relator, on behalf of herself and the State of Massachusetts, incorporates

by reference paragraphs 1 through 168 as if set forth fully here.

170.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

171.     Medicaid is jointly funded by the federal and state governments.

172.     Defendants submitted or caused to be submitted claims to the Massachusetts Medicaid system and/or other government-funded system for payment or approval.

173.     Pursuant to the Massachusetts False Claims Act, codified at Mass. Ann. Laws Ch. 12, § 5(A), *et seq.*, Defendants are liable to the United States/State of Massachusetts for three times the amount of damages that the United States/State of Massachusetts sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Massachusetts as follows:

a.     that the United States/State of Massachusetts be awarded damages in the amount of three times the damages sustained by the United States/State of Massachusetts because of the false claims alleged within this  Complaint;

b.     that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Massachusetts and/or its grantees;

c.     that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence

of the Massachusetts False Claims Act for which redress is sought in this

Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant

to the Massachusetts False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XVI:
## Violation of State Law: Michigan Medicaid False Claims Act

174.    Relator, on behalf of herself and the State of Michigan, incorporates by

reference paragraphs 1 through 173 as if set forth fully here.

175.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

176.    Medicaid is jointly funded by the federal and state governments.

177.    Defendants submitted or caused to be submitted claims to the Michigan

Medicaid system and/or other government-funded system for payment or approval.

178.    Pursuant to the Michigan Medicaid False Claims Act, codified at MI

Public Act 337, MCL § 400.611, *et seq*., Defendants are liable to the United States/State

of Michigan for three times the amount of damages that the United States/State of

Michigan sustained, costs of the action and a penalty of not less than $5,000 and not more

than $10,000 for each false claim.  The highest possible penalties are appropriate in this

case in light of the Defendants' actual knowledge. The highest possible penalties are also

57

appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Michigan as follows:

a.  that the United States/State of Michigan be awarded damages at the highest rate allowable by law because of the false claims alleged within this Complaint;

b.  that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Massachusetts and/or its grantees;

c.  that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.  that the Court grant permanent injunctive relief to prevent any recurrence of the Michigan Medicaid False Claims Act for which redress is sought in this Complaint;

e.  that the Relator be awarded the maximum amount allowed to her pursuant to the Michigan Medicaid False Claims Act; and

f.  that this Court award such other and further relief as it deems proper.

## COUNT XVII:
## Violation of State Law:  Minnesota False Claims Act

179.     Relator, on behalf of herself and the State of Minnesota, incorporates by reference paragraphs 1 through 178 as if set forth fully here.

180.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

181.     Medicaid is jointly funded by the federal and state governments.

182.     Defendants submitted or caused to be submitted claims to the Minnesota Medicaid Act system and/or other government-funded system for payment or approval.

183.     Pursuant to the Minnesota False Claims Act, codified at Minn. Stat. §15C.01, *et seq.*, Defendants are liable to the United States/State of Minnesota for three times the amount of damages that the United States/State of Minnesota sustained, costs of the action and a penalty of not less than $5,500 and not more than $11,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Minnesota as follows:

a.     that the United States/State of Minnesota be awarded damages in the amount of three times the damages sustained by the United States/State of Minnesota because of the false claims alleged within this  Complaint;

b.      that civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States/State of Minnesota and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence of the Minnesota False Claims Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant to the Minnesota False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XVIII:
## Violation of State Law:  Missouri Health Care Payment Fraud and Abuse Act

184.    Relator, on behalf of herself and the State of Missouri, incorporates by reference paragraphs 1 through 183 as if set forth fully here.

185.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

186.    Medicaid is jointly funded by the federal and state governments.

187.    Defendants submitted or caused to be submitted claims to the Missouri Medicaid system and/or other government-funded system for payment or approval.

188.    Pursuant to the Missouri Health Care Payment Fraud and Abuse Act, codified at Mo. Rev. Stat. §191.900, *et seq*., Defendants are liable to the United States/State of Missouri for three times the amount of damages that the United States/State of Missouri sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Missouri as follows:

g.    that the United States/State of Missouri be awarded damages in the amount of three times the damages sustained by the United States/State of Missouri because of the false claims alleged within this  Complaint;

h.    that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Missouri and/or its grantees;

i.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

j.    that the Court grant permanent injunctive relief to prevent any recurrence of the Missouri Health Care Payment Fraud and Abuse Act for which redress is sought in this Complaint;

k.      that the Relator be awarded the maximum amount allowed to her pursuant

to the Missouri Health Care Payment Fraud and Abuse Act; and

l.      that this Court award such other and further relief as it deems proper.

## COUNT XIX:
## Violation of State Law:  Montana False Claims Act

189.    Relator, on behalf of herself and the State of Montana, incorporates by

reference paragraphs 1 through 188 as if set forth fully here.

190.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

191.    Medicaid is jointly funded by the federal and state governments.

192.    Defendants submitted or caused to be submitted claims to the Montana

Medicaid system and/or other government-funded system for payment or approval.

193.    Pursuant to the Montana False Claims Act, codified at Mont. Code Ann. §

17-8-401, *et seq.*, Defendants are liable to the United States/State of Montana for not less

than two times and not more than three times the amount of damages that the United

States/State of Montana sustained, costs of the action and a penalty of not more than

$10,000 for each false claim.  The highest possible penalties are appropriate in this case

in light of the Defendants' actual knowledge. The highest possible penalties are also

appropriate in this case to send a message to Defendants' industry that they must abide by

federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Montana as follows:

a.      that the United States/State of Montana be awarded damages in the amount of three times the damages sustained by the United States/State of Montana because of the false claims alleged within this Complaint;

b.      that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Montana and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence of the Montana False Claims Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant to the Montana False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XX:
## Violation of State Law:  Nevada Submission of False Claims to State or Local Government

194.     Relator, on behalf of herself and the State of Nevada, incorporates by reference paragraphs 1 through 193 as if set forth fully here.

195.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

196.     Medicaid is jointly funded by the federal and state governments.

197.     Defendants submitted or caused to be submitted claims to the Nevada Medicaid system and/or other government-funded system for payment or approval.

198.     Pursuant to the Nevada Submission of False Claims to State or Local Government, codified at Nev. Rev. Stat. § 357.010, *et seq.*, Defendants are liable to the United States/State of Nevada for three times the amount of damages that the United States/State of Nevada sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Nevada as follows:

a.     that the United States/State of Nevada be awarded damages in the amount of three times the damages sustained by the United

States/State of Nevada because of the false claims alleged within
this Complaint;

b.   that civil penalties of $10,000 be imposed for each and every false
claim that Defendants presented to the United States/State of
Nevada and/or its grantees;

c.   that pre- and post-judgment interest be awarded along with
reasonable attorneys' fees, costs, and expenses that Relator
necessarily incurred in bringing and pressing this case;

d.   that the Court grant permanent injunctive relief to prevent any
recurrence of the Nevada Submission of False Claims to State or
Local Government for which redress is sought in this Complaint;

e.   that the Relator be awarded the maximum amount allowed to her
pursuant to the Nevada Submission of False Claims to State or
Local Government; and

f.   that this Court award such other and further relief as it deems
proper.

## COUNT XXI:
## Violation of State Law:  New Hampshire False Claims Act

199.   Relator, on behalf of herself and the State of New Hampshire, incorporates
by reference paragraphs 1 through 198 as if set forth fully here.

200.   Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over
Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

201.    Medicaid is jointly funded by the federal and state governments.

202.    Defendants submitted or caused to be submitted claims to the New Hampshire Medicaid system and/or other government-funded system for payment or approval.

203.    Pursuant to the New Hampshire False Claims Act, codified at New Hampshire § 167:61-b, *et seq.*, Defendants are liable to the United States/State of New Hampshire for three times the amount of damages that the United States/State of New Hampshire sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.  The amount in controversy here exceeds $5,000.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of New Hampshire as follows:

a.    that the United States/State of New Hampshire be awarded damages in the amount of three times the damages sustained by the United States/State of New Hampshire because of the false claims alleged within this Complaint;

b.      that civil penalties of $10,000 be imposed for each and every false

claim that Defendants presented to the United States/State of New

Hampshire and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with

reasonable attorneys' fees, costs, and expenses that Relator

necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the New Hampshire False Claims Act for which

redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the New Hampshire False Claims Act; and

f.      that this Court award such other and further relief as it deems

proper.

**COUNT XXII:**
**Violation of State Law:  New Jersey False Claims Act**

204.    Relator, on behalf of herself and the State of New Jersey, incorporates by

reference paragraphs 1 through 203 as if set forth fully here.

205.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

206.    Medicaid is jointly funded by the federal and state governments.

207.   Defendants submitted or caused to be submitted claims to the New Jersey Medicaid system and/or other government-funded system for payment or approval.

208.   Pursuant to the New Jersey False Claims Act, codified at NJ Stat. § 2A:32C-1, , *et seq.*, Defendants are liable to the United States/State of New Jersey for three times the amount of damages that the United States/State of New Jersey sustained, costs of the action and a penalty of not less than $5,500 and not more than $11,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of New Jersey as follows:

a.   that the United States/State of New Jersey be awarded damages in the amount of three times the damages sustained by the United States/State of New Jersey because of the false claims alleged within this Complaint;

b.   that civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States/State of New Jersey and/or its grantees;

c.   that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the New Jersey False Claims Act for which redress is

sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the New Jersey False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

<u>**COUNT XXV:**</u>
<u>**Violation of State Law:  New Mexico Medicaid False Claims Act and New Mexico**</u>
<u>**Fraud Against Taxpayers Act**</u>

209.    Relator, on behalf of herself and the State of New Mexico, incorporates by

reference paragraphs 1 through 208 as if set forth fully here.

210.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

211.    Medicaid is jointly funded by the federal and state governments.

212.    Defendants submitted or caused to be submitted claims to the New

Mexico Medicaid system and/or other government-funded system for payment or

approval.

213.    Pursuant to the New Mexico Medicaid False Claims Act, codified at

N.M.S.A. 27-14-1, *et seq*., and/or the New Mexico Fraud Against Taxpayers Act,

codified at N.M.S.A. 44-9-1, *et seq*., Defendants are liable to the United States/State of

New Mexico for three times the amount of damages that the United States/state sustained,

costs of the action and a civil recovery for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of New Mexico as follows:

a.    that the United States/State of New Mexico be awarded damages in the amount of three times the damages sustained by the United States/State of New Mexico because of the false claims alleged within this Complaint;

b.    that maximum civil recoveries allowed by law for each and every false claim that Defendants presented to the United States/State of New Mexico and/or its grantees;

c.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.    that the Court grant permanent injunctive relief to prevent any recurrence of the New Mexico Medicaid False Claims Act and/or the New Mexico Fraud Against Taxpayers Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the New Mexico Medicaid False Claims Act New

Mexico Fraud Against Taxpayers Act; and

f.      that this Court award such other and further relief as it deems

proper.

**COUNT XXIV:**
**Violation of State Law:  New York False Claims Act**

214.    Relator, on behalf of herself and the State of New York, incorporates by

reference paragraphs 1 through 213 as if set forth fully here.

215.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

216.    Medicaid is jointly funded by the federal and state governments.

217.    Defendants submitted or caused to be submitted claims to the New York

Medicaid system and/or other government-funded system for payment or approval.

218.    Pursuant to the New York False Claims Act, codified at NY State. Fin.

Law, ch. 13 §§ 187-194, Defendants are liable to the United States/State of New York for

three times the amount of damages that the United States/State of New York sustained,

costs of the action and a penalty of not less than $6,000 and not more than $12,000 for

each false claim.  The highest possible penalties are appropriate in this case in light of the

Defendants' actual knowledge.   The highest possible penalties are also appropriate in

this case to send a message to Defendants' industry that they must abide by federal and

state laws.  Defendants each has an income over $1 million and the harm to the State of New York exceeds $350,000.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of New York as follows:

a.     that the United States/State of New York be awarded damages in the amount of three times the damages sustained by the United States/State of New York because of the false claims alleged within this Complaint;

b.     that civil penalties of $12,000 be imposed for each and every false claim that Defendants presented to the United States/State of New York and/or its grantees;

c.     that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.     that the Court grant permanent injunctive relief to prevent any recurrence of the New York State False Claims Act for which redress is sought in this Complaint;

e.     that the Relator be awarded the maximum amount allowed to her pursuant to the New York State False Claims Act; and

f.     that this Court award such other and further relief as it deems proper.

## COUNT XXV:
## Violation of State Law:  North Carolina False Claims Act

219.    Relator, on behalf of herself and the State of North Carolina, incorporates by reference paragraphs 1 through 218 as if set forth fully here.

220.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

221.    Medicaid is jointly funded by the federal and state governments.

222.    Defendants submitted or caused to be submitted claims to the North Carolina Medicaid system and/or other government-funded system for payment or approval.

223.    Pursuant to the North Carolina False Claims Act, S.L. 2009-554/HB 1135, Defendants are liable to the United States/State of North Carolina for three times the amount of damages that the United States/State of North Carolina sustained, costs of the action and a penalty of not less than $5,500 and not more than $11,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge.  The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of North Carolina as follows:

a.    that the United States/State of North Carolina be awarded damages in the amount of three times the damages sustained by the United

States/State of North Carolina because of the false claims alleged

within this Complaint;

b.      that civil penalties of $11,000 be imposed for each and every false

claim that Defendants presented to the United States/State of North

Carolina and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable

attorneys' fees, costs, and expenses that Relator necessarily incurred in

bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the North Carolina False Claims Act for which redress is

sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the North Carolina False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XXVI:
## Violation of State Law:  Oklahoma Medicaid False Claims Act

224.    Relator, on behalf of herself and the State of Oklahoma, incorporates by

reference paragraphs 1 through 223 as if set forth fully here.

225.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

226.    Medicaid is jointly funded by the federal and state governments.

227.    Defendants submitted or caused to be submitted claims to the Oklahoma Medicaid system and/or other government-funded system for payment or approval.

228.    Pursuant to the Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63, § 5053, *et seq.*, Defendants are liable to the United States/State of Oklahoma for three times the amount of damages that the United States/State of Oklahoma sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge.  The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Oklahoma as follows:

    a.    that the United States/State of Oklahoma be awarded damages in the amount of three times the damages sustained by the United States/State of Oklahoma because of the false claims alleged within this Complaint;

    b.    that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Oklahoma and/or its grantees;

    c.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the Oklahoma Medicaid False Claims Act for which

redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the Oklahoma Medicaid False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XXVII:
## Violation of State Law:  Rhode Island State False Claims Act

229.    Relator, on behalf of herself and the State of Rhode Island, incorporates by

reference paragraphs 1 through 228 as if set forth fully here.

230.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

231.    Medicaid is jointly funded by the federal and state governments.

232.    Defendants submitted or caused to be submitted claims to the Rhode

Island Medicaid system and/or other government-funded system for payment or approval.

233.    Pursuant to the Rhode Island State False Claims Act, Defendants are liable

to the United States/State of Rhode Island for three times the amount of damages that the

United States/State of Rhode Island sustained, costs of the action and a penalty of not less

than $5,000 and not more than $10,000 for each false claim.  The highest possible

penalties are appropriate in this case in light of the Defendants' actual knowledge.  The

highest possible penalties are also appropriate in this case to send a message to

Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against

Defendants and in favor of the United States/State of Rhode Island as follows:

a.   that the United States/State of Rhode Island be awarded damages in
the amount of three times the damages sustained by the United
States/State of Rhode Island because of the false claims alleged within
this Complaint;

b.   that civil penalties of $10,000 be imposed for each and every false
claim that Defendants presented to the United States/State of Rhode
Island and/or its grantees;

c.   that pre- and post-judgment interest be awarded along with reasonable
attorneys' fees, costs, and expenses that Relator necessarily incurred in
bringing and pressing this case;

d.   that the Court grant permanent injunctive relief to prevent any
recurrence of the Rhode Island State False Claims Act for which
redress is sought in this Complaint;

e.   that the Relator be awarded the maximum amount allowed to her
pursuant to the Rhode Island State False Claims Act; and

f.   that this Court award such other and further relief as it deems proper.

### COUNT XXIII:
### Violation of State Law:  Tennessee Medicaid False Claims Act and False Claims Act

234.    Relator, on behalf of herself and the State of Tennessee, incorporates by reference paragraphs 1 through 233 as if set forth fully here.

235.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

236.    Medicaid is jointly funded by the federal and state governments.

237.    Defendants submitted or caused to be submitted claims to the Tennessee Medicaid system and/or other government-funded system for payment or approval.

238.    Pursuant to the Tennessee Medicaid False Claims Act, codified at Tenn. Code Ann., § 71-5-181, *et seq*., and/or the Tennessee False Claims Act, codified at Tenn. Code Ann., § 4-18-101, *et seq*., Defendants are liable to the United States/State of Tennessee for three times the amount of damages that the United States/State of Tennessee sustained, costs of the action and a penalty of not less than $5,000 and not more than $25,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge.  The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.  The amount in controversy exceeds $500.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Tennessee as follows:

a.      that the United States/State of Tennessee be awarded damages in the
amount of three times the damages sustained by the United States/State of
Tennessee because of the false claims alleged within this Complaint;

b.      that civil penalties of  $25,000 be imposed for each and every false claim
that Defendants presented to the United States/State of Tennessee and/or
its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable
attorneys' fees, costs, and expenses that Relator necessarily incurred in
bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence
of the Tennessee Medicaid False Claims Act and/or the Tennessee False
Claims Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant
to the Tennessee Medicaid False Claims Act and/or the Tennessee False
Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XXIX:
## Violation of State Law:  Texas Medicaid Fraud Prevention Act

239.    Relator, on behalf of herself and the State of Texas, incorporates by
reference paragraphs 1 through 238 as if set forth fully here.

240.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over
Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

241.    Medicaid is jointly funded by the federal and state governments.

242.    Defendants submitted or caused to be submitted claims to the Texas Medicaid system and/or other government-funded system for payment or approval.

243.    Pursuant to the Texas Medicaid Fraud Prevention Act, codified at Tex. Hum. Res. Code, § 36.001, *et seq.*, Defendants are liable to the United States/State of Texas for two times the amount of damages that the United States/State of Texas sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge.  The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Texas as follows:

a.    that the United States/State of Texas be awarded damages in the amount of two times the damages sustained by the United States/State of Texas because of the false claims alleged within this Complaint;

b.    that civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States/State of Texas and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any recurrence of the Texas Medicaid Fraud Prevention Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her pursuant to the Texas Medicaid Fraud Prevention Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XXX:
## Violation of State Law:  Utah False Claims Act

244.    Relator, on behalf of herself and the State of Utah, incorporates by reference paragraphs 1 through 243 as if set forth fully here.

245.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

246.    Medicaid is jointly funded by the federal and state governments.

247.    Defendants submitted or caused to be submitted claims to the Utah Medicaid system and/or other government-funded system for payment or approval.

248.    Pursuant to the Utah False Claims Act, Utah Code Annotated, Title 26, Chapter 20, Defendants are liable to the United States/State of Utah for full restitution, three times the amount of damages that the United States/State of Utah sustained, costs of the action and a penalty of not less than $2,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge.  The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Utah as follows:

a.    that the United States/State of Utah be awarded damages in the amount of three times the damages sustained by the United States/State of Utah because of the false claims alleged within this Complaint;

b.    that civil penalties of $2,000 be imposed for each and every false claim that Defendants presented to the United States/State of Utah and/or its grantees;

c.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

d.    that the Court grant permanent injunctive relief to prevent any recurrence of the Utah False Claims Act for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the Utah False Claims Act; and

f.      that this Court award such other and further relief as it deems proper.

## COUNT XXXI:
## Violation of State Law:  Virginia Fraud Against Taxpayers Act

249.    Relator, on behalf of herself and the State of Virginia, incorporates by

reference paragraphs 1 through 248 as if set forth fully here.

250.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

251.    Medicaid is jointly funded by the federal and state governments.

252.    Defendants submitted or caused to be submitted claims to the Virginia

Medicaid system and/or other government-funded system for payment or approval.

253.    Pursuant to the Virginia Fraud Against Taxpayers Act, codified at Vir.

Stat. Ann., § 8.01-216, *et seq*., Defendants are liable to the United States/State of Virginia

for three times the amount of damages that the United States/State of Virginia sustained,

costs of the action and a penalty of not less than $5,500 and not more than $11,000 for

each false claim.  The highest possible penalties are appropriate in this case in light of the

Defendants' actual knowledge.  The highest possible penalties are also appropriate in this

case to send a message to Defendants' industry that they must abide by federal and state

laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Virginia as follows:

    a.    that the United States/State of Virginia be awarded damages in the amount of three times the damages sustained by the United States/State of Virginia because of the false claims alleged within this Complaint;

    b.    that civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States/State of Virginia and/or its grantees;

    c.    that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relator necessarily incurred in bringing and pressing this case;

    d.    that the Court grant permanent injunctive relief to prevent any recurrence of the Virginia Fraud Against Taxpayers Act for which redress is sought in this Complaint;

    e.    that the Relator be awarded the maximum amount allowed to her pursuant to the Virginia Fraud Against Taxpayers Act; and

    f.    that this Court award such other and further relief as it deems proper.

### COUNT XXXII:
### Violation of State Law:  Wisconsin False Claims for Medical Assistance Law

254.    Relator, on behalf of herself and the State of Wisconsin, incorporates by reference paragraphs 1 through 253 as if set forth fully here.

255.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

256.     Medicaid is jointly funded by the federal and state governments.

257.     Defendants submitted or caused to be submitted claims to the Wisconsin Medicaid system and/or other government-funded system for payment or approval.

258.     Pursuant to the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20.931, *et seq.*, Defendants are liable to the United States/State of Wisconsin for three times the amount of damages that the United States/State of Wisconsin sustained, costs of the action and a penalty of not less than $5,000 and not more than $10,000 for each false claim.  The highest possible penalties are appropriate in this case in light of the Defendants' actual knowledge. The highest possible penalties are also appropriate in this case to send a message to Defendants' industry that they must abide by federal and state laws.

WHEREFORE, Relator respectfully request that the Court enter judgment against Defendants and in favor of the United States/State of Wisconsin as follows:

a.      that the United States/State of Wisconsin be awarded damages in the amount of three times the damages sustained by the United States/State of Wisconsin because of the false claims alleged within this Complaint;

85

b.      that civil penalties of $10,000 be imposed for each and every false

claim that Defendants presented to the United States/State of

Wisconsin and/or its grantees;

c.      that pre- and post-judgment interest be awarded along with

reasonable attorneys' fees, costs, and expenses that Relator

necessarily incurred in bringing and pressing this case;

d.      that the Court grant permanent injunctive relief to prevent any

recurrence of the Wisconsin False Claims for Medical Assistance

Law for which redress is sought in this Complaint;

e.      that the Relator be awarded the maximum amount allowed to her

pursuant to the Wisconsin False Claims for Medical Assistance

Law; and

f.      that this Court award such other and further relief as it deems

proper.

## COUNT XXXIII:
## Common Fund

259.    Relator, on behalf of herself, incorporates by reference paragraphs 1

through 258 as if set forth fully here.

260.    Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over

Relator's state law claims because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

261.    Medicaid is jointly funded by the federal and state governments.

262.     Defendants submitted or caused to be submitted claims to state Medicaid programs in all fifty states and the District of Columbia.

263.     Relator's efforts have or will create, discover, increase or preserve a fund to which others also have a claim.

264.     Relator is entitled to recover from the fund.

265.     States will receive a benefit from the common fund that Relator has or will create.

266.     If any state that does not provide for a statutory fee to Relator is allowed to obtain the benefit of this case without contributing to its costs, that state without a statutory fee to Relator will be unjustly enriched at the expense of Relator.

267.     Any state that does not provide for a statutory fee to Relator and that benefits from the fund will be easily identifiable.

WHEREFORE, Relator respectfully requests that the Court enter judgment in her favor for all relief as the Court deems proper in law and equity including the costs of the litigation and reasonable attorneys' fees.

## COUNT XXXIV:
### Common Law *Qui Tam*

268.     Relator, on behalf of herself, incorporates by reference paragraphs 1 through 267 as if set forth fully here.

269.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Relator's state law claims because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

270.   Medicaid is jointly funded by the federal and state governments.

271.   Defendants submitted or caused to be submitted claims to the state Medicaid programs in all fifty states and the District of Columbia.

272.   Relator's efforts have or will create, discover, increase or preserve a fund in which the state governments will share.

273.   The term *qui tam* is Latin for the phrase "he who brings an action on behalf of the king as well as for himself."

274.   Pursuant to the common law of *qui tam*, Relator is entitled to recover a portion of the fund that is shared by all fifty states and the District of Columbia (including states that do not provide a statutory fee to Relator) as a result of Relator's efforts.

WHEREFORE, Relator respectfully requests that the Court enter judgment in her favor for a portion of the fund in which the governmental entities will share, costs of the litigation, including reasonable attorneys' fees, and all other and further relief as the Court deems proper in law and equity.

## Demand for Jury Trial/Designation of Place of Trial

Relator, on behalf of the United States and the States named herein, and on behalf of herself, hereby demands a trial by jury on all counts and allegations of wrongful conduct alleged in this  Complaint in the United States District Court for the District of Kansas, Kansas City, Kansas.

Dated:  November 9, 2010                              Respectfully submitted,

<u>/s/ Carrie M. Brous</u>
Carrie M. Brous KS # 18157
Tammy L. Horn KS # 15418
Brous Horn LLC
10313 West 140th Street
The Carriage House
Overland Park, KS  66221
(913) 897-7877
fax (913) 982-2515
thorn@broushorn.com
cbrous@broushorn.com
www.broushorn.com


ATTORNEYS FOR RELATOR

## <u>Certificate of Service</u>

I hereby certify that a copy of the foregoing filed under seal along with a written disclosure of substantially all material evidence and information possessed by Relator is being filed with the Court under seal and is being served via hand delivery, electronic and/or overnight mail, on this 10th day of November, 2011, to:

Eric H. Holder, United States Attorney General
Attorneys, Civil Division
c/o Dan Anderson, Assistant Attorney General
U.S. Department of Justice, Civil Fraud Division
Commercial Litigation Branch
601 D Street, NW
Washington, D.C.  20004

Barry R. Grissom, United States Attorney
U.S. Courthouse
500 State Ave., Ste. 360
Kansas City, Kansas 66101

Tanya Treadway, Assistant United States Attorney
444 S.E. Quincy, Ste. 290
Topeka, KS  66683

Emily Metzger, Assistant United States Attorney
1200 Epic Center
301 Main
Wichita, KS  67202

NAMFUCU
Mark Matus
matusm@michigan.gov

And is being served via electronic mail to:

State Attorneys General

(Pursuant to 31 USC § 3732(c) (as amended by the Fraud Enforcement and Recovery Act of 2009 (123 Stat 1617 (May 20, 2009) and the state statutes listed in Counts II-XXXI)

/s/ Carrie M. Brous_____

Attorney for Relator